UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KINSALE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BENCHMARK INSURANCE COMPANY,<br><br>Defendant. | Case No.: 23-cv-00079-DMS-DEB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pending before the Court is Plaintiff Kinsale Insurance Co.'s ("Kinsale" or "Plaintiff") motion for partial summary judgment (Pl.'s motion for partial summary judgment ("Pl.'s Mot."), ECF No. 19.)  Defendant Benchmark Insurance Co. ("Benchmark" or "Defendant") filed its response in opposition (Defendant's Opp'n ("Opp'n"), ECF No. 21). Plaintiff filed a reply. (Pl.'s Reply, ECF No. 23). For the reasons discussed below, the Court grants Plaintiff's motion for partial summary judgment.[1]

---

[1] The Court is in receipt of Plaintiff's response to the Court's Order to Show Cause for lack of subject-matter jurisdiction. Upon review of the response, the Court finds that there is proper subject-matter jurisdiction in this case. Plaintiff has satisfied the requirements under 28 U.S.C. § 1332 because the parties are diverse and Plaintiff has alleged an amount in controversy exceeding $75,000.

1

## I. BACKGROUND

Plaintiff and Defendant issued separate general commercial liability insurance policies to non-party, Indigo Construction Corporation ("ICC"). Plaintiff's polices were in effect from October 26, 2018 to October 6, 2022. Defendant's policies were in effect from October 6, 2016 to October 6, 2017 and October 6, 2018 to October 26, 2018.

On April 26, 2017, ICC entered into a contract with the general contractor, T.B. Penick & Sons ("TBP"), to perform concrete work on a parking garage to be constructed at Francis Parker School in San Diego County. ICC was one of many subcontractors performing work on the garage. The contract provided that ICC would install shotcrete and other subcontractors would perform additional functions, including waterproofing. ICC completed work on the project in early 2019. In or around June of 2019, the school informed TBP of alleged damages arising from faulty design, construction, and/or materials used in constructing the garage after a rainstorm damaged the garage. The school and TBP sued one another in San Diego County Superior Court ("underlying matter"). Subsequently, TBP sued multiple subcontractors in connection with the underlying suit, including ICC. A claim in the underlying matter was that ICC's work may have damaged or contributed to the damaging of the waterproofing process.

Plaintiff and Defendant jointly defended ICC in the underlying matter for one year before Defendant withdrew from representation in July of 2022. Defendant withdrew from representation claiming that (1) its policies were not in place at the time of the alleged damage; and (2) the type of damage alleged was exempted from coverage under Defendant's policies.

---

In the Court's prior Order, the Court provided Defendant the option to respond to the Court's Order and Plaintiff's response by January 21, 2024. To date, Defendant has not filed a response nor has Defendant raised any jurisdictional issues. "Objections to subject-matter jurisdiction, however, may be raised at any time." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). Thus, in the interests of judicial efficiency, the Court issues this ruling with the understanding that Defendant is free to challenge subject-matter jurisdiction at any point.

In October of 2022, Plaintiff settled the underlying matter. Plaintiff subsequently brought suit in this Court for equitable contribution and equitable indemnity alleging that Defendant had a duty to defend and a duty to indemnify ICC in the underlying matter. Defendant has counterclaimed for equitable contribution and equitable indemnity to recover the amount Defendant spent in defense fees for the year before Defendant withdrew from representation. Plaintiff brings the instant motion for partial summary judgment requesting a finding that Defendant had a duty to defend ICC in the underlying matter.

## II.     LEGAL STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id. See also Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### III.   DISCUSSION

Plaintiff moves for partial summary judgment on the issue that Defendant had a duty to defend ICC in the underlying matter.  To prevail on a motion for partial summary judgment regarding the duty to defend, "the insured must prove the existence of a *potential for coverage*, while the insurer must establish the *absence of any such potential*.  In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal.4th 287, 300 (1993).  Plaintiff contends that the initial complaint and the facts known to Defendant at the outset of the underlying action establish that ICC's work may have damaged the parking structure at issue in the underlying suit within the period Defendant's policies were in effect.  Thus, Plaintiff contends that there is no genuine issue as to any material fact that such a potential for coverage invoked Defendant's duty to defend ICC in the underlying matter.

Defendant contests Plaintiff's motion for partial summary judgment on two grounds: (1) the motion is procedurally inaccurate, and (2) Defendant had no duty to defend ICC in the underlying matter.  The Court addresses each argument in turn.

#### A. The Motion is Procedurally Accurate.

Defendant contends that resolution of this motion is procedurally inaccurate because it does not resolve a disputed issue in this case.  The Court disagrees.  Plaintiff has brought a claim for equitable contribution.  "Under California law, an action for equitable contribution allows an insurer to sue for pro rata reimbursement from another insurance company when it has defended a mutually insured party without participation by the other insurance company." *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010).  "[A] right to equitable contribution arises when two or more insurance companies owe a *duty to defend* or indemnify the same insured." *Travelers Prop. Cas. Co. of Am. v. Liberty Surplus Ins. Corp.*, 806 F. App'x. 526, 530 (9th Cir. 2020) (emphasis added).  A core disputed issue in this case is whether Defendant had a duty to defend ICC in the

underlying matter. Plaintiff must prove Defendant had a duty to defend ICC to prevail on its claim for equitable contribution.

Defendant argues that "even if there was a decision issued that Benchmark had a duty to defend, it would not resolve any issue in this case" for it does not determine if or how much Defendant must contribute towards the settlement. (Opp'n at 10). However, "[u]nlike the obligation to indemnify, which is only determined when the insured's underlying liability is established, the duty to defend must be assessed at the very outset of a case. An insurer may have a duty to defend even when it ultimately has no obligation to indemnify. . . ." *AIU Ins. Co. v. McKesson Corp.*, 598 F.Supp.3d 774, 783 (N.D. Cal. 2022) (citations omitted). Thus, the Court may find that Defendant had a duty to defend ICC without determining whether Defendant had a duty to indemnify ICC or contribute to the settlement. This Order properly resolves the narrow yet disputed issue of whether Defendant had a duty to defend ICC in the underlying matter.

Defendant further contends that the motion is improper because Defendant *did* defend ICC for one year and spent more than Plaintiff in defense fees before withdrawing from representation. However, California law has made clear that "imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf." *Montrose*, 6 Cal. 4th at 295; *see Buss. v. Superior Ct.*, 16 Cal. 4th 35, 49, 65 (1997) ("To defend meaningfully, the insurer must defend immediately. To defend immediately, it must defend *entirely*." (emphasis added) (citation omitted). It is not enough that Kinsale continued to defend ICC in the underlying matter after Defendant withdrew from representation. "The fact that one insurer may owe a duty to provide a defense will not excuse a second insurer's failure to honor its separate and independent contractual obligation to defend." *Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078, 1088 (2005) (citing *Cont'l Cas. Co. v. Zurich Ins. Co.*, 57 Cal. 2d 27, 37-38 (1961)). Thus, in determining only whether Defendant had a duty to defend ICC, it is not relevant that Plaintiff had a duty to defend or that Defendant paid more than Plaintiff in defense fees before withdrawing. Because Defendant withdrew from

representation before the case was final and did not defend ICC "entirely," the Court finds that the motion resolves the disputed issue of whether Defendant breached its duty to defend ICC in the underlying matter. (*Id.*)

Furthermore, "[a]n insurer's duty to defend can generally be resolved at the summary judgment stage." *Assoc. Indus. Ins. Co., Inc., v. Ategrity Spec. Ins. Co., Inc.*, 0023 WL 3874021 (N.D. Cal. June 6, 2023). Thus, the Court finds that Plaintiff's motion is not only procedurally accurate, but common. *See, e.g., Skanska USA Civ. West Cal. Dist. Inc. v. Nat'l Interest. Ins. Co.*, 551 F.Supp.3d 1010, 1020 (S.D. Cal. 2021); *James River Ins. Co. v. Medolac Labs.*, 290 F.Supp.3d 956, 959 (C.D. Cal. 2018); *Crosby Est. at Rancho Santa Fe Master Assoc. v. Ironshore Spec. Ins. Co.*, 498 F.Supp.3d 1242, 1262 (C.D. Cal. 2020) (Courts granting motions for partial summary judgment on an opposing party's duty to defend). The Court finds this motion to be procedurally accurate and will now address the merits.

**B. Defendant had a Duty to Defend ICC in the Underlying Matter.**

Under California law, "an insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Montrose*, 6 Cal. 4th at 295. "The duty to defend is broader than the duty to indemnify." *Id.* at 299-300. "If any facts stated in or fairly inferable from the complaint, or otherwise known or discovered by the insurer, suggest a claim *potentially* covered by the policy, the insurer's duty to defend arises." *Albert v. Truck Ins. Exch.*, 23 Cal. App. 5th 367, 377-78 (2018) (emphasis added). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose,* 6 Cal. App. 4th 299 at 300.

Defendant asserts that it did not have a duty to defend ICC in the underlying matter because (1) Defendant's policies were not in effect at the time the alleged damage occurred; (2) even if the policies were in effect, they do not cover the type of damage alleged in the complaint. The Court will address both arguments.

First, it is not clear to the Court when the alleged damage occurred. Both parties acknowledge that the complaint against ICC in the underlying matter alleged that the

school first *noticed* the damage in June of 2019. Plaintiff alleges that the damage could have occurred before, during, or after Defendant's policies were in effect. Defendant argues that Plaintiff's allegations are speculative and that the damage occurred after a rainfall in 2019 outside the period Defendant's policies were in effect. (Opp'n at 5, 14). To support this argument, Defendant cites Plaintiff's reservation of rights letter which reads as follows: "The Francis Parker School alleges numerous failures and damages relating to and/or arising from the podium deck waterproofing at the Structure, as well as allegations of damaged waterproofing arising from the installation of the shotcrete." (Def. App. of Exhibits in Support of Opp'n ("Def. Ex."), ECF No. 21 at Ex. 213). This statement does not conclusively state that the alleged damage occurred in 2019. In fact, the statement makes clear that there are "numerous" allegations "relating to and/or arising from" the waterproofing and ICC's installation of the shotcrete. (*Id.*) Thus, the Court finds that there is an unresolved dispute regarding when the alleged damage occurred and if such damage may have occurred before 2019 and within the period Defendant's policies were in effect. "If coverage depends on an unresolved dispute over a factual question, the very existence of that dispute would establish a possibility of coverage and thus a duty to defend." *Mirpad, LLC v. Cal. Ins. Guarantee Ass'n.*, 132 Cal.App.4th 1058, 1068 (2005). Because Defendant has failed to make a showing that the alleged damage definitively occurred outside the period in which its policies were in effect, the Court finds a potential for coverage. Under California law, this mere possibility of coverage triggers Defendant's duty to defend. *Skanska*, 551 F.Supp.3d 1010 at 1020.

Second, Defendant claims that even if the alleged damage occurred while Defendant's policies were in effect, Defendant did not have a duty to defend ICC because Defendant's policies do not cover the type of damage alleged. "[An] insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds." *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App.4th 1017, 1038-39 (2002). Specifically, Defendant contends that the alleged damage falls within exclusion j(5) of Defendant's policies. Exclusion j(5) provides:

> This insurance does not apply to . . . [p]roperty damage to . . . [t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations.

(Pl. App. of Exhibits in Support of Mot. ("Pl. Ex."), ECF No. 19, Exhibit A at 26). Defendant claims that it withdrew from coverage after Kinsale's Senior Claim Examiner, Joe Caviglia, informed Defendant via email on June 10, 2022 "the allegation is that the insured damaged the waterproofing WHILE installing the shotcrete."  (Def. Ex. 207). However, in a later email sent by Mr. Caviglia on August 1, 2022, he states "the explanation that the waterproofing was directly damage[d] by the insured while installing concrete/shotcrete is my understanding of our defense expert's explanation of the *most likely* way it could be possible for the insured's work to damage the waterproofing." (*Id.*) (emphasis added).  Mr. Caviglia specifically clarified that "Neither Benchmark nor any other party can definitively state at this time how any alleged damage to the waterproofing occurred." (*Id.*)  Mr. Caviglia further noted that testing had yet to go forward to conclusively show that the alleged damage arose out of ICC's work installing the shotcrete. (*Id.*)  Defendant withdrew from representation relying on these communications with Mr. Caviglia.  The Court finds that Defendant has failed to meet its burden of proving "that the exclusion applies in all possible worlds," as it is unclear to the Court how the alleged damage occurred.[2]  *Atlantic Mut. Ins. Co.*, 100 Cal. App.4th at 1038-39.

"While 'it may ultimately be determined that [an insurer] has a viable defense to coverage by virtue of the application of [an] exclusion, this can only affect its liability for indemnification," not its duty to defend, because the 'duty to defend depend[s] on the

---

[2] Defendant contends that Plaintiff has "relied on the same j(5) exclusion in the past to deny coverage where its inured's caused direct damage to the property the insured is working on." (Def. Opp. at 14) *See Kinsale Ins. Co. v. ETOPSI Oil & Gas LLC*, 447 F.Supp.3d 555 (E.D. Tex 2020).  The Court need not address this argument because it is not clear to the Court when the alleged damage occurred or if the damage was directly caused by the insured while working on the property.

existence of only a potential for coverage.'" *Id.* at 1040. Thus, the Court finds that Defendant had a duty to defend ICC in the underlying matter because Defendant has not produced sufficient evidence to show no potential of coverage.

Ultimately, the uncertainty around when and how the alleged damage occurred and if such damage is exempted from Defendant's policies raises doubt as to whether Defendant owed ICC a duty to defend, however, such doubt must be resolved in ICC's favor. *Montrose,* 6 Cal. App. 4th 299 at 300. Thus, the Court finds that Defendant had a duty to defend ICC in the underlying matter and Defendant breached this duty by terminating representation before the case was final.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

Dated: January 8, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court