**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KINSALE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BENCHMARK INSURANCE COMPANY,<br><br>Defendant. | Case No.: 23-cv-00079-DMS-DEB<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pending before the Court is Defendant Benchmark Insurance Co.'s motion for partial summary judgment on whether it owes a duty to indemnify under its insurance policies. (Def.'s Motion for Partial Summary Judgment ("Def.'s Mot."), ECF No. 31.) Plaintiff Kinsale Insurance Co. filed its response in opposition (Plaintiff's Opp'n ("Opp'n"), ECF No. 32.) Defendant filed a reply. (Def.'s Reply, ECF No. 34.) For the reasons discussed below, the Court denies Defendant's motion and finds that there are triable questions of fact regarding Defendant's duty to indemnify.

## I. BACKGROUND

Plaintiff and Defendant issued separate general commercial liability insurance policies to non-party, Indigo Construction Corporation ("ICC"), a subcontractor that later became embroiled in a construction defect lawsuit in state court. Plaintiff's policies were

in effect from October 26, 2018, to October 6, 2022.  Defendant's policies were in effect from October 6, 2016, to October 6, 2017, and October 6, 2018 to October 26, 2018.

On April 26, 2017, ICC entered into a contract with the general contractor, T.B. Penick & Sons ("TBP"), to perform concrete work on a parking garage to be constructed at Francis Parker School in San Diego County.  ICC was one of many subcontractors performing work on the garage.  The contract provided that ICC would install shotcrete and other subcontractors would perform additional functions, including waterproofing.  ICC completed its work on the project in early 2019.  In or around June of 2019, the school informed TBP of alleged water damage arising from faulty design, construction, and/or materials used in constructing the garage after a rainstorm damaged the garage.  The school and TBP sued one another in San Diego County Superior Court ("underlying matter").  Subsequently, TBP sued multiple subcontractors in connection with the underlying suit, including ICC.  A claim in the underlying matter was that ICC's work may have damaged or contributed to the damaging of the waterproofing process.

Plaintiff and Defendant jointly defended ICC in the underlying matter for one year before Defendant withdrew from representation in July of 2022.  Defendant withdrew from representation claiming that (1) its policies were not in place at the time of the alleged water damage; and (2) the damage was excluded from coverage under one of the exclusionary provisions of Defendant's policies.

In October of 2022, Plaintiff settled the underlying matter.  Plaintiff subsequently brought suit in this Court for equitable contribution and equitable indemnity alleging that Defendant had a duty to defend and indemnify ICC in the underlying matter.  Defendant counterclaimed for equitable contribution and equitable indemnity to recover the amount it spent in defense fees for the year before it withdrew from representation.  The Court previously granted Plaintiff's motion for summary judgment on the duty defend, finding Defendant owed a duty to defend ICC in the underlying the matter given the potential for coverage under its policy.  Defendant now brings the subject motion for partial summary judgment on grounds that it had no duty to indemnify ICC in the underlying matter.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id.* See also *Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III. DISCUSSION

### A. Duty to Indemnify

"The insurer's duty to indemnify runs to claims that are actually covered, in light of the facts proved. . . . It arises only after liability is established." *Buss v. Superior Court*, 16 Cal. 4th 35, 45–46 (Cal. 1997) (citations omitted). "[A]n insurer's duty to defend is broader than its duty to indemnify." *Marie Y. v. Gen. Star Indem. Co.*, 110 Cal. App. 4th 928, 950 (Cal. Ct. App. 2003). "The duty to defend exists if there is any potential for

coverage under the policy, while the duty to indemnify exists only if the insured's conduct is actually covered." *Id.* Defendant brings the subject motion on grounds that Plaintiff has not established that ICC's conduct is covered under the policy, i.e, that the water damage occurred during Defendant's policy period.

Generally, the duty to indemnify requires the plaintiff to make a showing of actual coverage. "However, the burdens and proof are altered somewhat when one insurer with a defense duty does not join in the defense of the underlying action." *St. Paul Mercury Ins. v. Mountain W. Farm Bureau Mut. Ins.*, 210 Cal. App. 4th 645, 654 (Cal. Ct. App. 2012). Under California law, "in an action for equitable contribution by a settling insurer against a nonparticipating insurer, the settling insurer has met its burden of proof when it makes a prima facie . . . showing of *potential* coverage necessary to trigger the nonparticipating insurer's duty to defend—and that the burden of proof then shifts to the recalcitrant insurer to prove the absence of actual coverage." *Safeco Ins. Co. of Am. v. Superior Court*, 140 Cal. App. 4th 874, 877 (Cal. Ct. App. 2006) (emphasis added).

Here, the Court held in its prior Order that Defendant owed a duty to defend ICC in the underlying matter and breached that duty by prematurely withdrawing from representation and failing to participate in the underlying settlement. (Order Granting Plaintiff's Motion for Partial Summary Judgment, ("Order"), (ECF No. 26).) Thus, for purposes of equitable contribution, Plaintiff is the settling insurer and Defendant is the nonparticipating insurer. Although Defendant contributed a substantial amount to the defense, as the Court held in its prior order, the duty to defend requires a potential insurer to provide a complete defense. *See Buss*, 16 Cal. 4th at 49. ("To defend meaningfully, the insurer must defend immediately. To defend immediately, it must defend entirely."); *id.* at 46 ("[The duty to defend] is discharged when the action is concluded. It may be extinguished earlier, if it is shown that no claim can in fact be covered.") The Court is not aware of, and Defendant fails to cite, any authority establishing that it is not subject to this burden shift because it partially contributed to the defense before prematurely withdrawing. Thus, the Court finds that the burden shift applies. *See Safeco Ins. Co. of Am.*, 140 Cal.

App. 4th at 881. ("Accordingly, while we agree with [the nonparticipating insurer] that it must contribute to the settlements only if there was actual coverage under its policies, we agree with [the settling insurer] that in the circumstances of this case—where [the nonparticipating insurer]'s duty to defend is undisputed, and where by law the settlements are presumptively reasonable—the burden of proof is on [the nonparticipating insurer] to establish that there was no coverage (and not on [the settling insurer] to prove the opposite).") Thus, Defendant has the burden of proving no actual coverage. *Id.* ("[A nonparticipating insurer] retains its right to raise other coverage defenses as affirmative defenses in a contribution action—which means, of course, that the recalcitrant coinsurer has the burden of proof on those issues.")

**B. There is a Potential for Coverage Under Defendant's Policies.**

Defendant argues the Court should grant the instant motion for partial summary judgment and find that it had no duty to indemnify ICC in the underlying matter because the alleged damage occurred in September of 2019 outside of Defendant's period of coverage. To support its motion, Defendant argues: (1) the damage giving rise to the underlying lawsuit occurred after a rainstorm in 2019; (2) Plaintiff failed to produce evidence that the damage occurred within Defendant's 20-day window of coverage in October of 2018; (3) even if the damage occurred while Defendant's policy was in effect, it is excluded from coverage under the terms of the policy; and (4) Plaintiff's expert testimony in relation to timing of damages is speculative and not supported by the facts. Given the burden shift, Defendant's arguments succeed only if it establishes that there is no genuine issue of material fact that the damage occurred outside Defendant's policy period.

In its prior order, the Court found that Defendant owed a duty to defend because "there is an unresolved dispute regarding when the alleged damage occurred and if such damage may have occurred before 2019 and within the period Defendant's policies were in effect," and that such doubt must be resolved in favor of the insured under the duty to defend. (Order at 7.) Defendant now invites the Court, based on essentially the same

arguments and evidence, to conclude that there are no triable questions of fact that the water damage occurred in 2019, outside its policy period.

First, Defendant alleges that the damage definitively occurred as a result of a rainstorm in 2019. To support its argument, Defendant argues that in ICC's First Amended Complaint filed in the underlying matter, the general contractor alleged that the school first provided notice of water damage in June of 2019. (Def.'s Mot. at 8.) Additionally, the School's cross-complaint "alleged that during rain events in or about September of 2019, property damage to the podium deck was discovered." (*Id.* at 9). Defendant argues that these facts "lin[e]-up with the emails exchanged during this project which did not have any mention of noticing an actual leak until December of 2018 (in Kinsale's policy period)." (*Id.*) Defendant also cites San Diego's weather report in 2019 and argues that "[d]etermining that the loss occurred in 2019 makes sense since [in October of 2018,] there was only one day with .48 inches of rain (followed by five days of sun), but three inches of rain were observed in December of 2019." (Def.'s Mot. at 13.)[1]

Plaintiff argues that the Court already addressed these arguments in its prior Order and concluded the evidence does not conclusively establish that the water damage occurred in 2019. As noted in the prior Order, the foregoing evidence merely indicates that the school first noticed and reported potential water damage in December of 2018 and again in June of 2019. It does not establish when the alleged damage occurred and it fails to

---

[1] Defendant asks the Court to take judicial notice of the National Centers for Environmental Information's daily summaries of the temperature and precipitation recorded at the San Diego International Airport Station between October of 2018 and December of 2019 and a copy of a map taken from Google maps displaying the approximate distance between the San Diego airport and the location of the parking garage. Under Rule 201 of the Federal Rules of the Evidence, the Court may take judicial notice of evidence that is not subject to reasonable dispute and can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned. The Court takes judicial notice of the weather reports "because they are public records of an administrative body that are publicly accessibl[e] on the agency['s] website[]." *Kunde Enterprises, Inc. v. National Surety Corp.*, 608 F. Supp. 3d 883, 895 (N.D. Cal. 2022) (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2017)). The Court takes judicial notice of the copy of the map taken from Google maps as "a source whose accuracy regarding locations cannot be reasonably questioned." *Id.* (citing *Kalani v. Starbucks Coffee Co.*, 685 F. App'x 883, 886 (9th Cir. 2017)).

foreclose the possibility that the damage may have arisen before or during Defendant's policy period.  It also does not foreclose the possibility that there were multiple incidents of damage as opposed to one incident, any one of which could have occurred during Defendant's policy period.  Defendant's policy makes clear that its "insurance applies" to property damage if such damage "first takes place during the policy period, *regardless of when the ... property damage becomes known or apparent to anyone*." (Def.'s Mot. at 12) (emphasis added).  Thus, the determinative factor for coverage is when the damage first occurred, not when it was first noticed.  Because it is still unclear on the present record when the damage occurred, that question—an obviously material question of fact—must be resolved at trial.

Second, Defendant argues that Plaintiff has not produced any reliable documents or evidence indicating that the damage occurred within its 20-day policy period in October of 2018.  Specifically, Defendant alleges that Plaintiff's "expert's report pointed to emails identifying waterproofing pinholes in September of 2018 – claiming pinholes could have allowed the concrete to get wet."[2]  (Def.'s Mot. at 14.)  While Defendant does not bring a Daubert motion seeking to strike the expert testimony, it complains that the expert "horribly misread" documents, "disregards common sense," and engages in "speculation." (Reply Br. at 8.)  Defendant argues that when the expert opines that water damage may have occurred in October of 2018, he is entirely wrong because: (1) the waterproofing was done by a different contractor, not ICC; (2) he failed to note other emails which confirmed that the pinholes were being patched; (3) even if the Court accepts that the waterproofing was done by ICC and the pinholes were not patched, he acknowledges that water on

---

[2] Plaintiff's expert described a pinhole as "a small hole…that occurs in fluid-applied waterproofing when rolling over a surface, and they refer to it as gassing off, which creates a little bubble that pops and leaves a hole behind."  (Plaintiff's Expert Kevin Marler's Deposition Transcript, ("Plaintiff's Expert's Deposition"), (ECF No. 31-2), at 29.) Pinholes are "avenues where the water can go through.  When the waterproofing is installed, it should bridge over those cracks, and it should not have any pinholes in it, but we do have pinholes, water is getting into the pinholes, and causing damage. Also, if it gets into the crack through a pinhole, it will cause damage." (*Id.* at 48.)

concrete is not damage; and (4) even if water on the concrete could be considered damage, it would merely be damage to ICC's own concrete work, which is excluded by both Defendant's and Plaintiff's policies. (*Id.* at 14–15.)

As noted, Defendant has the burden of showing that there is no genuine issue of material fact that the water damage occurred outside its policy. Although Defendant quarrels with the opinions of Plaintiff's expert, those arguments on the present record go to weight. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.") Additionally, in determining whether there is a genuine issue of material fact, the Court views the evidence, including Plaintiff's expert's testimony, in the light most favorable to Plaintiff, the non-moving party. *Id.* ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.") (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, at 158–59).

Accordingly, viewing the evidence in the light most favorable to Plaintiff, Defendant has not met its burden because there is a genuine dispute regarding when the alleged damage occurred. Plaintiff argues that Defendant oversimplifies Plaintiff's expert testimony and "overlooks the timing of the work as it bears on when damages could have occurred." (Opp'n at 9.) The Court agrees. Plaintiff's expert opines that ICC's work potentially caused "damage to the waterproofing by virtue of cracking to the concrete which, in turn, would have damaged the waterproofing." (Opp'n at 3.) To support his conclusion, Plaintiff's expert discussed the timing of ICC's work on vertical and horizontal surfaces of the parking structure. As to vertical services, Plaintiff's expert testified that ICC performed shotcrete and concrete work on vertical surfaces after the waterproofing had been installed. Thus, the damage to the waterproofing could have occurred either while ICC was performing its work or shortly after. (Opp'n at 9.) As to horizontal surfaces, Plaintiff's expert testified that ICC performed its work before the waterproofing was applied to ICC's completed work. (*Id.* at 13.) Accordingly, Plaintiff's expert opines that

damage to the waterproofing necessarily occurred after ICC completed its work and potentially within Defendant's policy period. Because Plaintiff need only establish a potential for coverage as discussed above, Defendant must show there was no coverage under the policy as a matter of law. It has failed to do so.

Third, Defendant argues that even if the alleged damage occurred while Defendant's policies were in effect, the damage is excluded from coverage under its policy because the damage occurred while ICC installed the shotcrete and concrete. Under exclusion j(5) of the policy, damages that arise during the insured's operations on a structure are excluded. *See Clarendon Am. Ins. v. Gen. Sec. Indem. Co. of Ariz.*, 193 Cal. App. 4th 1377, 1325 (Cal. Ct. App. 2011) ("The exclusion found in j(5) applies to works in progress. The insurer is not obligated to indemnify a policyholder for property damage that occurs while the insured is performing operations on that property.")

Defendant argues that the damages at issue fall within exclusion j(5) because Plaintiff's own expert report states "that 'waterproofing was *damaged when the shotcrete and concrete walls were installed* over the waterproofing.'" (Def.'s Mot. at 17) (Plaintiff's Expert Kevin Marler's Report, ("Plaintiff's Expert's Report"), (ECF No. 31-2), at 180.) However, Plaintiff's expert testified that the damage necessarily occurred after ICC completed its work on horizontal surfaces and during or after ICC completed its work on vertical surfaces. The expert also made clear that he cannot be sure when the water damage occurred and declined to provide a specific date. (Plaintiff's Expert's Deposition at 48.) Thus, on the present record, it cannot be determined as a matter of law that the damages at issue are excluded under the policy. While Defendant's arguments may ultimately be successful at trial, it has failed to establish that there is no genuine issue of material fact as to the timing of the damage.

At bottom, Defendant asks the Court to grant its motion based on an absence of evidence presented by Plaintiff showing covered property damage within Defendant's policies. In doing so, Defendant misapprehends Plaintiff's burden and its own. Defendant must demonstrate an absence of coverage as matter of law. Considering the evidence in

the light most favorable to Plaintiff, which the Court must at this stage, the Court finds that there is a factual dispute regarding when the water damage occurred and whether it occurred when Defendant's policy was in place.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion for partial summary judgment is **DENIED.**

**IT IS SO ORDERED.**

Dated:  August 20, 2024

_____
Hon. Dana M. Sabraw, Chief Judge
United States District Court